477 P.2d 1019

**STATE of New Mexico, Plaintiff-Appellee,**
**v.**
**Robert Lee BEACHUM, Defendant-Appellant.**
**No. 494.**

Court of Appeals of New Mexico.

Nov. 6, 1970.

Rehearing Denied Nov. 25, 1970.

Second Rehearing Denied Dec. 23, 1970.

Turner W. Branch, Albuquerque, N. M., for appellant.

James A. Maloney, Atty. Gen., Santa Fe, N. M., John A. Darden, Asst. Atty. Gen., for appellee.

## OPINION

SPIESS, Chief Judge.

Following a verdict of guilty based on the charge of robbery while armed with a deadly weapon, defendant was sentenced to the Penitentiary of New Mexico for a term of not less than ten nor more than fifty years and he now appeals.

Questions presented relate to (1) the admissibility of certain real evidence; (2) the sufficiency of the evidence to support a conclusion of guilt, and (3) the propriety of the sentence imposed by the court.

We will, briefly, state the evidence pertinent to the questions presented. A robbery was committed in an Albuquerque store by two men, both were masked and one was armed with and displayed a pistol. The pistol was described by a store employee as "a small gun, light black." Witnesses to the robbery could only describe the coats the robbers were wearing and could not identify the robbers. One robber wore a coat with a fur collar and the other was wearing a "greenish" jacket. A number of items were stolen from the store by the robbers, including money, checks, and two moneybags (one containing cash register tapes, the other unused money orders).

Following the robbery the Sheriff's office was immediately notified, and this office in turn notified two officers who were working together at the time in the general vicinity of the store. The officers so notified proceeded in an automobile toward the store, and, as they were stopped at a stop sign, a Studebaker car, occupied by two persons, was driven at a slow rate of speed past the squad car. One of the officers saw the driver of the Studebaker and identified him as the defendant, Beachum. The officers turned their vehicle and followed the Studebaker car which then gained speed and turned into a driveway, where it came to a stop. The officers followed the Studebaker into the driveway and stopped a distance of some twenty feet from it. One of the officers testified:

"At the time we pulled in behind them, about twenty feet or so, the car come [sic] to a stop, the doors flew open and both subjects came out and the driver goes east and the passenger goes around the car and goes in a south direction."

The following testimony relating to the defendant, and given by the officer, we think is also pertinent:

"Q. Which way did he go when he ran east?

A. He went east from the car.

Q. Did you attempt to apprehend him?

A. Yes, I did.

Q. You were unsuccessful?

A. Yes.

Q. Is the place he ran an open field?

A. No, he had to jump over a six-foot fence.

Q. Is that where he lost you?

A. Yes.

Q. Now, did you try to shoot him; did you take a shot at him?

A. Yes. I hollered twice that we were detectives and he did not stop and I fired at him."

Within a short time a third officer apprehended the defendant and placed him under arrest. The officers examined the interior of the Studebaker car and searched the passenger. A number of checks were found upon the person of the passenger which were identified as property of the store which had been taken during the robbery. Items which were found in the Studebaker car included: two bags, one containing cash register tapes, the other blank money orders; a .22 caliber revolver with bullets; and a green jacket. These items, together with a photograph of the Studebaker car, were identified at the trial and admitted in evidence over defendant's objection.

Defendant first contends that the "TRIAL COURT ERRED IN ALLOWING DEMONSTRATIVE EVIDENCE TO BE EXHIBITED IN FRONT OF JURY OVER DEFENDANT'S OBJECTION WHEN THE SAME WAS NEVER RELATED TO THE CRIME OR CONNECTED TO THE DEFENDANT."

Defendant argues that he "* * * was denied a fair trial by having such inflammatory evidence as a gun before the senses of the jury when such evidence was not shown to be relevant or connected to the defendant." ·

The objection relates to several items, which we have mentioned, and which were found in the car, together with checks found on the person of the passenger, and a photograph of the car. This contention, in essence, as we understand it, is that the items were not admissible into evidence; consequently, permitting them, and in particular the pistol, to be exhibited to the jury, was reversible error.

The moneybags and contents, together with the checks and the jacket, bear a relationship to the crime and to one of the perpetrators. A store employee identified the moneybags, and contents, and the checks as property of the store which had been taken by the robbers. The green jacket was found in the car with the other items and, as shown, the testimony was to the effect that one of the robbers was wearing a "greenish" jacket.

The fact that a short time following the robbery the pistol was found with items which had been stolen by the robbers could, in our opinion, reasonably lead to the conclusion that the pistol found was the one used in committing the robbery. The description of the pistol as given by a witness in a general way would fit the one found in the car.

█ Although these items were not on the person of the defendant when he was apprehended they were in the automobile which he was driving and which he and his companion abandoned. The checks, as we have stated, were on the person of the passenger. The items were adequately connected with the defendant and the crime and admissible in evidence. c. f. Cole v. State, 450 S.W.2d 661 (Tex.Crim. App.1970); Ives v. Commonwealth, 184 Va. 877, 36 S.E.2d 904 (1946); State v. Vicory, 51 N.E.2d 290 (Ct.App.Ohio 1943).

It is our view that in the fact situation presented here defendant's argument should be directed to the weight rather than the admissibility of the evidence. How closely these items were connected with the defendant and the crime and what weight was to be accorded this evidence was for the jury to determine.

"* * * Because of the wide variety of facts that may have circumstantial probative value, the courts are liberal in admitting evidence of facts which appear to bear some degree of relevancy to the matters in issue. Much discretion is left to the trial court, and its rulings will be sustained if the testimony which is admitted tends even remotely to establish the ultimate fact."

1 Wharton, Criminal Evidence, § 151 (12th ed. 1955). We hold that in these circumstances an abuse of discretion on the part of the trial judge is not shown by his admitting these items in evidence, and permitting them, including the pistol, to be displayed to the jury.

We have considered authorities cited by defendant, including State v. Kidd, 24 N. M. 572, 175 P. 772 (1917); and State v. McKnight, 21 N.M. 14, 153 P. 76 (1915). These cases do not compel a conclusion other than that here expressed.

█ In passing this point we do not overlook defendant's objection to the admissibility of the photograph of the Studebaker car. It does appear from the record that the photograph fairly represents the Studebaker car in which the several items which we have discussed were found by the officers. The admissibility of the photograph was addressed to the sound discretion of the trial court. State v. Sedillo, 76

N.M. 273, 414 P.2d 500 (1966); State v. Armstrong, 61 N.M. 258, 298 P.2d 941 (1956). We find no abuse of discretion on the part of the trial court in admitting the photograph.

Defendant's challenge to the sufficiency of the evidence to support the verdict is without merit. He argues that he was " * * * convicted on circumstantial evidence, however, this evidence was not of such nature that it pointed exclusively to the guilt of the defendant, nor was it of such a nature so as to be inconsistent with defendant's innocence."

It is fundamental that where circumstances alone are relied upon they must point unerringly to the defendant, and be incompatible with, and exclude every reasonable hypothesis other than his guilt. State v. Ford, 80 N.M. 649, 459 P.2d 353 (Ct.App.1969); State v. Kennedy, 80 N.M. 152, 452 P.2d 486 (Ct.App.1969).

It appears undisputed that articles which had been stolen from the store by the robbers were found a short time following the robbery in the front seat of the automobile which was being driven by defendant. This evidence, although another person accompanied defendant in the car, would support a conclusion that defendant was in exclusive possession of the property. See State v. Flores, 76 N.M. 134, 412 P.2d 560 (1966).

It may be conceded that recently stolen property found in the exclusive possession of a defendant will not alone support a conclusion of guilt. In State v. Graves, 73 N.M. 79, 385 P.2d 635 (1963), the court said in considering a jury instruction:

" * * * a determination by the jury, that the defendant had in his possession the fruits of the crime, does not justify a finding of guilt unless there is evidence of other circumstances connecting the defendant with the offense."

In the instant case, the defendant, after being followed into the driveway by the officers, abandoned the car he was driving and fled, indicating a consciousness of guilt and that defendant was seeking to escape trial and punishment for the robbery. See State v. Nelson, 65 N.M. 403, 338 P.2d 301 (1959); and State v. Rodriguez, 23 N.M. 156, 167 P. 426 (1917). It further appears from the record that defendant was apprehended by the police only minutes after the robbery, and only a short distance from the scene of the crime. The clothing found in the automobile from which defendant fled fit the description of clothing worn by the robbers, according to eye witnesses. It, therefore, appears that there was a sufficient circumstance of guilt in addition to the possession of the stolen property to support the verdict. People v. Wells, 187 Cal.App.2d 324, 9 Cal. Rptr. 384 (1960).

In our opinion, the obvious and most reasonable inference to be drawn from the established facts is that defendant was a participant in the robbery. Viewing the evidence in its most favorable aspect in support of the verdict, State v. Ford, supra, we think it substantially supports the conclusion of guilt, and the facts and circumstances are irreconcilable and inconsistent with any reasonable theory of innocence.

Defendant finally contends that the sentence imposed upon defendant was excessive " * * * considering the evidence and relative guilt of the defendant." This contention is not sustainable. Defendant was convicted of robbery while armed with a deadly weapon in violation of § 40A–16–2, N.M.S.A.1953 (Repl.1964) which provides:

"Robbery consists of the theft of anything of value from the person of another or from the immediate control of another, by use or threatened use of force or violence."

    *      *      *      *      *      *

"Whoever commits robbery while armed with a deadly weapon is guilty of a second degree felony."

Punishment imposed for a second degree felony is provided by § 40A–29–3, subd. B, N.M.S.A.1953 (Repl.1964) as follows:

"Where the defendant has been convicted of a crime constituting a second de-

gree felony, the judge shall sentence such person to be imprisoned in the penitentiary for the term of not less than ten [10] years nor more than fifty [50] years, * * *"

The trial court is without authority to fix a lesser sentence than that provided by statute. State v. Romero, 73 N.M. 109, 385 P.2d 967 (1963). Defendant does not contend, nor would the record support a contention that the trial court abused its discretion in not deferring the imposition of sentence, or suspending the same in whole or in part.

The judgment and sentence of the trial court should be affirmed.

It is so ordered.

WOOD and HENDLEY, JJ., concur.